**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DEBORAH J. BRAMMER,

        Plaintiff,

vs.                                    Case No. 3:06-cv-16-J-32MCR

DONALD C. WINTER, Secretary of the
Navy,

        Defendant.

_____

## ORDER[1]

    This discrimination and retaliation case is before the Court on Defendant Donald C. Winter's Motion for Summary Judgment (Doc. 14), Plaintiff Deborah J. Brammer's Response (Doc. 18), Defendant's Reply (Doc. 20-2), and Plaintiff's Sur-reply thereto (Doc. 24.)  This Court heard oral argument on the motion on November 19, 2007.

## I.  Background

    Taken in the light most favorable to the nonmoving party, these are the facts. At the time this suit was filed, Plaintiff was 55 years old.  (Doc. 4 ¶ 3.) Plaintiff was

_____

[1]    Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

employed as a civilian management analyst in the Manpower Department of the Naval Hospital in Jacksonville beginning in 1993.  (Doc. 4 at ¶ 6, Doc. 23-2 at 9.)  In October 2002, LCDR Valerie Morrison (Morrison) became Plaintiff's immediate supervisor.  (Doc. 14-2 at 8.)  At that point, Plaintiff had already filed three EEO complaints against other individuals in the Navy, not directly relevant to this case. (Doc. 18-2.)  Shortly after Morrison became Plaintiff's supervisor, Morrison made various comments to Plaintiff about her age and her pending EEO complaints.  As these comments partially form the basis of Plaintiff's presence in this Court, they are worth reprinting in full:

> For example, Valerie Morrison informed me that there was an 18 year age difference between her age and my age.  She stated to me that I was old and that I should retire.  Several months later, in June 2004, approximately one month after I had filed my second formal charge of discrimination naming her as a responsible management official . . . she told me that the only reason she did not send me to receive training was due to the fact that I was close to retirement age.  She also told me that she had attended a meeting . . . where she participated in discussions related to a list of employees who were eligible to retire within five (5) years.  She told me that she saw my name on that list. With regard to my pending EEO complaints, she would often ask me questions about my EEO complaints in the presence of other employees. . . . On one occasion, she told me that she had heard that I had been offered an early separation package in order to resolve one of my EEO complaints.

(Id. at 5.)

According to Morrison, Plaintiff and Morrison had a positive relationship until approximately April of 2003; indeed, the harassment Plaintiff alleges did not start until June of 2003.  (Doc. 14-2 at 26-27;  Doc. 18-2 at 2.)   Morrison testified that around

2

this time,  Plaintiff became less patient, questioned her authority and took an inappropriate tone of voice.  (Doc. 14-2 at 26-29.)  In June of 2003, Plaintiff alleges the first of what is a long list of incidents at  work that created a hostile work environment.  See Doc. 18-2 at 7-21 (detailing approximately 100 occurrences between June of 2003 and December of 2004).  Morrison issued Plaintiff a letter of reprimand in November 2003 for making false accusations against Morrison and acting inappropriately at work.  (Doc. 14-2 at 27-30.)  On June 23, 2004, the Director for Administration at the Naval Hospital, CPT Gina Jaeger (Jaeger), issued Plaintiff a fourteen (14) day suspension for failure to follow her supervisor's instructions and inappropriate behavior.  (Doc. 14-4 at 45; Doc. 14-6 at 3.)  Plaintiff filed EEO claims regarding this suspension naming Jaeger[2], Morrison and other Navy employees as discriminating officials.  (Doc. 18-10 at 7.)

In early December 2004, Plaintiff provided a note from her physician indicating that she was suffering from depression.  (Doc. 14-2 at 10-11.)  According to her deposition, Plaintiff's symptoms manifested as follows:

> I am suffering from major severe depression, which has caused hearing loss, vision loss.  I'm not able to process information.  I'm not able to understand and hear.  I have extreme gastro internal difficulty.  I suffer from migraine headaches.  I suffer from chest pains.  I have extreme anxiety.  I do not sleep. I am fearful to be around people.  I don't trust people.  I am afraid–and I don't know how to describe this as a disability, but I'm afraid of [uniforms].  I'm

---

[2]     Jaeger's maiden name was Spleen.  (Doc. 23-4 at 5.)

terrified of [uniforms].[3]

(Id. at 19.)  Plaintiff sought a "reasonable accommodation" to allow her to continue working, requesting: (1) additional time to complete her assignments until she could be evaluated by a psychiatrist, (2) that Morrison call out to her before approaching Plaintiff from behind and (3) that Morrison not come any closer than three (3) feet and speak to Plaintiff from a distance if possible.  (Doc. 14-5 at 12.)  In December 2004, Plaintiff went on an extended leave of absence after being seen by a psychiatrist. (Doc. 14-4 at 18.)  She never returned to work before her termination.  (Doc. 14-4 at 18.)

On February 25, 2005, Jaeger issued Plaintiff a Proposed Notice of Removal. (Doc. 14-6.)  After allowing her an opportunity to respond to the charges, Plaintiff was terminated on April 2, 2005.  In support of that action, Jaeger cited Plaintiff's failure to follow her supervisor's instructions and engaging in inappropriate workplace conduct.  (Id.)  Plaintiff filed this suit January 5, 2006.  (Doc. 1.)

## II.  Legal Standard

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The burden of demonstrating the satisfaction of this standard lies

---

[3]    While Plaintiff's deposition indicates that she was afraid of "islands," Plaintiff's counsel assures the Court that this was a transcription error, and Plaintiff testified she was afraid of uniforms.  (Doc. 18 at 9, n. 1.)

4

with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." <u>Branche v. Airtran Airways, Inc.</u>, 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).  In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor.  <u>Centurion Air Cargo, Inc. v. United Parcel Serv. Co.</u>, 420 F.3d 1146, 1149 (11th Cir. 2005).

A plaintiff can establish a prima facie case of discrimination using direct evidence of discrimination or by relying on circumstantial evidence to prove discriminatory intent.  <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1086 (11th Cir. 2004).  To establish a prima facie case using direct evidence, a plaintiff must present "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption; in other words, "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate ... constitute direct evidence." <u>Id.</u>  This is not a direct evidence case; thus Plaintiff must establish a prima facie case on her discrimination claims pursuant to <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), using circumstantial evidence.

5

In <u>McDonnell-Douglas</u>, the Supreme Court set forth the applicable legal framework for assessing circumstantial evidence discrimination claims.  Plaintiff is required to establish a prima facie case of discrimination by showing that: (1) she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside his classification more favorably; and (4) she was qualified for the job.  <u>McDonnell-Douglas Corp.</u>, 411 U.S. at 802; <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997).  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  <u>Holifield</u>, 115 F.3d at 1562.

If plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate, non-discriminatory reason for the employment action, which is clear, reasonably specific and worthy of credence.  <u>Hall v. Alabama Ass'n of Sch. Bds.</u>, 326 F.3d 1157, 1166 (11th Cir. 2003).  At this stage, the defendant has a burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced.  <u>Id.</u> (citing <u>McDonnell-Douglas</u>, 411 U.S. at 802).  The Eleventh Circuit has described this burden on the defendant as "exceedingly light."  <u>Batey v. Stone</u>, 24 F.3d 1330, 1334 (11th Cir. 1994) (citations omitted).

Once the employer satisfies its burden, the presumption against the defendant is rebutted, and plaintiff must show that the defendant's proffered reason is merely

pretext for an illegal motive.   McDonnell-Douglas, 411 U.S. at 802-04; Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002).   At this phase, the plaintiff must "introduce significantly probative evidence showing the asserted reason is merely pretext for discrimination." Sheppard v. Sears, Roebuck & Co., 391 F. Supp. 2d 1168, 1180 (S.D. Fla. 2005) (quoting Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1457 (11th Cir. 1997)).   The plaintiff cannot establish pretext merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer. Alexander v. Fulton Cty., 207 F.3d 1303, 1339 (11th Cir. 2000) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997)); Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) (courts "are not in the business of adjudging whether employment decisions are prudent or fair.   Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision").

A plaintiff may establish pretext in different ways.   She may either directly persuade the Court that a discriminatory reason more likely than not motivated the employer or may demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Jackson v. State of Ala. State Tenure Com'n, 405 F.3d 1276, 1289 (11th Cir. 2005).   Further, one of the indirect ways to show pretext is by illustrating that there was a deviation

from a policy in making an employment decision, especially when rules are bent or broken to give a protected person an advantage.  Carter v. Three Springs Residential Treatment, 132 F.3d 635, 644 (11th Cir. 1998).  However, standing alone, a deviation from company policy does not establish discriminatory animus.  Mitchell v. USBI Co., 186 F.3d 1352, 1355-56 (11th Cir. 1999).

## III.  Discussion

In her amended complaint, Plaintiff advances four counts: (1) Discrimination under the ADEA, (2) Discrimination under the Rehabilitation Act, (3) Retaliation based on her protected EEO activities, and (4) "Harassment and Retaliation in Violation of the ADEA and Rehabilitation Act."  (Doc. 4.)

### A.  Age Discrimination

To establish a prima facie case under the ADEA, Plaintiff must show that: (1) she was a member of the protected group of persons between the ages of forty and seventy; (2) she was discharged; (3) that a substantially younger person filled the position from which she was discharged; and (4) that she was qualified to do the job from which she was discharged.  Damon, 196 F.3d at 1359.  For the purposes of this motion, Defendant has conceded all but the third element.  (Doc. 14 at 7.)

The third element of the prima facie case has not been satisfied.  Plaintiff has presented no evidence that a younger person filled her GS-11 Management Analyst position.  The record shows that the position was actually abolished after Plaintiff's

termination.  (Doc. 14-8)  Instead, a GS-9 Management Analyst position was created in its place, and a 60 year-old man was transferred from a post overseas to fill that position.  (Id. at 3.)  Therefore, Plaintiff can not establish a traditional prima facie case under the ADEA.

Plaintiff argues that she is not required to show that she was replaced by a younger employee and, in any event, this case is more comparable to a reduction-in-force (RIF) case because Plaintiff's position was not replaced.  (Doc. 18 at 7-8.)  RIF discrimination cases generally involve employees who are laid off and not terminated for cause (as Plaintiff purportedly was).  See e.g. Earley v. Champion Intern. Corp., 907 F.2d 1077, 1079 (11th Cir. 1990) (RIF case where discharge was due to the "consolidation and reorganization of corporate staff and employees").  However, Plaintiff's age discrimination claim fails even if the Court analyzes her claim using parts of the RIF standard.

The main difference would be that under the RIF standard, Plaintiff might establish a prima facie case by providing "evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue."  Id. at 1082.  Through her affidavit, Plaintiff brings forward various statements by Morrison that purportedly show her intention to discriminate against Plaintiff based on age:

> For example, Valerie Morrison informed me that there was an 18 year age difference between her age and my age.  She stated to me that I was old and

> that I should retire.  Several months later, in June 2002 . . she told me that the only reason she did not send me to receive training was due to the fact that I was close to retirement age.  She also told me that she had attended a meeting . . . where she participated in discussions related to a list of employees who were eligible to retire within five (5) years.  She told me that she saw my name on that list.

(Doc. 18-2 at 4.)  While these comments no doubt refer to Plaintiff's age, these limited remarks are insufficient to establish a link between Plaintiff's termination and her age that would allow a reasonable fact finder to conclude that Defendant intended to discriminate against Plaintiff on the basis of her age.  See Simmons v. McGuffey Nursing Home, 619 F.2d 369, 371 (5th Cir. 1980) (affirming summary judgment on age discrimination claim despite one Board member stating "we want a younger man this time); see also Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 611 (11th Cir. 1987) (holding in RIF case that district court did not err in discounting the legal significance of personnel manager stating that to get another job "you would have to take another physical examination and at your age, I don't believe you could pass it").  This is especially true because an older employee was brought on to take over Plaintiff's duties, if not her job title.  Regardless of whether the Court uses the traditional prima facie elements of age discrimination or analogizes Plaintiff's situation to a RIF, Plaintiff is unable to establish a prima facie case of age discrimination.[4]

---

[4]    Even if Plaintiff could establish a prima facie case of age discrimination, the presence of legitimate, non-discriminatory reasons for her termination, discussed in relation to Count II, infra, nevertheless bars her claim.

Accordingly, the Court will grant Defendant's motion for summary judgment on Count I.

### B. Rehabilitation Act Claim

To establish a prima facie case under the Rehabilitation Act, Plaintiff must establish (1) that she is "an individual with a disability;" (2) that she is a "qualified individual with a disability;" and, (3) that she suffered an adverse employment action solely by reason of her disability. See 29 U.S.C. § 794(a)(2001) (emphasis supplied); see also Boone v. Rumsfeld, 172 Fed. Appx. 268; 270-271 (11th Cir. 2006). While the Rehabilitation Act was amended in 1992 and other Circuits have determined that the ADA's lesser standard of causation should be used for claims brought under the Rehabilitation Act, this is not the law in the Eleventh Circuit. See Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005) ("It is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on his disability . . . [r]ather, under the Rehabilitation Act, a plaintiff must prove that he suffered an adverse employment action 'solely by reason of' his handicap").

The Court need not determine if Plaintiff is a qualified individual with a disability because Plaintiff cannot establish that she was discriminated against in any way because of her depression.  Assuming arguendo that Plaintiff has established a prima facie case that she was removed based on her disability, Defendant has advanced legitimate, non-discriminatory reasons for that action.  See Doc. 14-6 at 3-5 (detailing

11

Defendant's justification for terminating Plaintiff).  Specifically, Defendant terminated Plaintiff for failing to follow the instructions of her supervisor and inappropriate behavior, giving numerous specific examples of the disruption that Plaintiff caused in the workplace.  See e.g. id. at 2 ("Despite LCDR Morrison's direct order, you continued the practice of writing notes concerning your co-workers on the government issued calendar on your desk"); id. at 3 ("Despite this instruction, you returned the IDP to LCDR Morrison without any input for discussion, signing and dating the form, fabricating that you had not met with your supervisor to discuss the IDP"); id. ("To take pictures of other employees without their consent is disruptive to the workplace"); id. at 4 ("[A]llegations that [Plaintiff] was threatened with physical or bodily harm are unfounded and without merit . . and the cause of these allegations an unnecessary disruption to the workplace").  Importantly, the general allegations of failing to follow her supervisor's instructions and inappropriate behavior were the same reasons given for Plaintiff's prior 14-day suspension.  (Doc. 18-7 at 16-17.)  Terminating Plaintiff based on insubordination and failure to follow instructions are legitimate motives that satisfy Defendant's burden under McDonnell-Douglas.

Because Defendant has met its burden and come forward with legitimate reasons why Plaintiff was terminated, the burden returns to Plaintiff to establish that the reasons advanced by Defendant are mere pretext.  Rojas, 285 F.3d at 1342.  Plaintiff has failed to do so and cannot provide any evidence that she was terminated

because of her disability.[5]   Plaintiff correctly points out that "when evidence is submitted indicating that Defendant's legitimate non-discriminatory reason is false, the trier of fact is allowed to infer a discriminatory intent on the part of Defendant." (Doc. 18 at 19-20.)  However, Plaintiff has not put forward any evidence that her employer's proffered reasons for the suspension and termination were mere pretext.  Although Plaintiff does argue the wisdom of these decisions, such an argument cannot be successful.  See Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason").  Simply relying on inconsistencies between the depositions of Plaintiff and Morrison is insufficient to establish that Morrison must be lying and fails to rebut the allegations that Plaintiff was terminated for legitimate reasons.[6]   Defendant has advanced

_____

[5]   Although to prove a Rehabilitation Act claim the Eleventh Circuit requires that the adverse employment action be taken "solely" because of Plaintiff's disability, the Court does not rely on that higher standard in considering Plaintiff's motion for summary judgment.

[6]   Plaintiff relies heavily on Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000) to stand for the fact that Morrison must be considered dishonest because her deposition testimony conflicts with that of Plaintiff's on some issues, thereby rebutting Defendant's proffered reasons for Plaintiff's termination and creating an issue of material fact on all claims.  See Doc. 18 at 7, 16, 19-20.)  This argument is without merit.  The Court has found no direct conflict on any matter regarding the reasons for Plaintiff's termination advanced by Defendant; specifically, that Plaintiff was disruptive and insubordinate.  Thus, this case is distinguished from Reeves.  Id. at 14.  Here, the only evidence supporting Plaintiff's allegations of pretext is her own affidavit.  See Doc. 18-2 at 21 ("Valerie Morrison's articulated reasons for my termination are false because I did not engage in the misconduct

unrebutted, non-discriminatory reasons as to why Plaintiff was terminated; accordingly, Plaintiff cannot establish that she was discriminated against because of her disability.[7]   Therefore, the Court will grant Defendant's motion for summary judgment on Count II.

### C.  Retaliation Claims

To establish a prima facie case of retaliation, Plaintiff must establish: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) the adverse employment action was causally related to the protected conduct.  See Williams v. Motorola, Inc., 303 F.3d 1284, 1291 (11th Cir. 2002).  Here, Plaintiff has established the first two elements of a prima facie case.  She engaged in statutorily protected activity by filing numerous EEO complaints, including

---

alleged").  This conclusary statement is insufficient to create an issue of fact as to pretext. "Reeves does not stand for the proposition that any evidence of falsity, regarding the reason for termination, combined with a prima facie case is sufficient to withstand summary judgment."  See Byer v. DTG Operations, Inc., No. 07-80033-CIV, 2007 WL 2746619, *9 (S.D. Fla. Sept. 18, 2007) (quoting Sonnier v. Computer Progams & Sys., Inc., 168 F.Supp 2d 1322, 1331 (S.D. Ala. 2001) (granting summary judgment despite employee's unsupported statements on the record that investigation was a "sham" and that another employee was caught sleeping on the job yet was not punished).

[7]   It is not clear whether there is a discrete claim of failure to accommodate under the Rehabilitation Act separate from Plaintiff's termination.  Assuming arguendo that there is, the Court finds that judgment is appropriate for Defendant as a matter of law.  Plaintiff made her accommodation request on December 3, 2004, but was unable to work past December 28, 2004.  See Doc. 14-5 at 10, 30.  Plaintiff has presented no evidence that requiring her supervisor to stay three feet away at all times, call out to her before approaching her, and providing more time to complete assignments would have allowed her to continue working past December 28.

complaints against Morrison.  See generally Doc. 18-2 at 2-4.   Plaintiff also suffered

two discrete adverse employment actions, her suspension and her termination.

However, Plaintiff has failed to show a causal connection between her

protected conduct and her suspension or termination.   "To establish a causal

connection, a plaintiff must show that the decision-makers were aware of the

protected conduct, and that the protected activity and the adverse action were not

wholly unrelated."  Gupta v. Florida Bd. Of Regents, 212 F.3d 571, 591 (11th Cir.

2000) (internal marks omitted).  "[C]lose temporal proximity may be sufficient" to make

such a showing.  Id.  In support of her claim, Plaintiff has produced an email from

Morrison which shows that the events are not wholly unrelated.  It reads, in part:

> I'm sure you also have access [Plaintiff's] EEO complaints against me and my
> rebuttal statements. Though your investigation is separate from the EEO stuff,
> the information really does impact upon both.  Mrs. Brammer has made
> numerous false allegations against myself . . . [s]he is very tiring and tries my
> very last nerve, but I know I must march on if the command is every going to
> be free from her.

(Doc. 18-6 at 2.)  Additionally, during her deposition, Morrison stated that she was

sure that she had verbalized a desire for Plaintiff to be terminated "[b]ecause my

emotions were so high in regards to everything that was happening; her continued

misconduct, the allegations that I had to answer in the separate process of her EEO

activities."  (Doc. 23-2 at 51.)  However, the Court cannot agree with Plaintiff's

submission that these statements are direct evidence of discrimination given the high

burden of proof under this circuit's case law to make such a showing.  See Burrell v.

15

Bd. of Trs. Of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997) (holding evidence to be circumstantial when it suggests, but does not prove, a discriminatory motive).  However, the statements do establish a causal link between Plaintiff's EEO activity and Morrison's recommendation.  Unfortunately for Plaintiff, that showing is not enough in this case.

The Eleventh Circuit has held that when the decision-maker and the recommending official are not the same person, "a plaintiff may not benefit from the inference of causation that would arise from their common identity."  See  Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1331 (11th Cir. 1999), cert. denied, 520 U.S. 1053 (2000); see also Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1248 (11th Cir. 1998) (sexual harassment).  Here, the final decision to both suspend and terminate Plaintiff was made by Jaeger.[8]  Therefore, to survive summary judgment, Plaintiff must prove that Jaeger merely affirmed Morrison's recommendation without conducting an independent evaluation of the allegations – in other words, that Morrison's recommendation (and the discriminatory animus behind it) was the true cause of Plaintiff's suspension/termination.  See Pennington v. City of Huntsville, 261

---

[8]   It is true that Jaeger is named in some of Plaintiff's EEO complaints as a discriminating official.  See Doc. 18-3.  There are also references to some allegedly inflammatory e-mails by Jaeger, but they are not in the record.  The Court finds Plaintiff's conclusary contentions of discrimination and retaliation are primarily based on the conduct of Morrison and that Jaeger is not singled out in such a way as to raise an issue of fact as to her status as an independent decision-maker.

F.3d 1262, 1270 (11th Cir. 2001) ("Where a decisionmaker conducts his own evaluation and makes an independent decision, his decision is free from the taint of a biased subordinate employee").  Plaintiff has made no such showing.

While admitting that Jaeger, not Morrison, made the final decision to suspend and terminate her, Plaintiff attempts to save her claim by falling back on the "cat's paw" theory enunciated by the Eleventh Circuit.  This theory allows the discriminatory animus of a supervisor to be attributed to a neutral decision-maker where there is no independent investigation of the supervisor's claims.  See Mehta v. HCA Health Services of Fla., Inc., 2007 WL 2406993, *5 (M.D. Fla. 2007).  "In such a case, the recommender is using the decision-maker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus."  Stimpson, 186 F.3d at 1331. Plaintiff states that Jaeger's final decision did not insulate Morrison's allegedly discriminatory animus because "[t]here is no evidence in the record of an independent investigation being conducted by Gina Jaeger."  (Doc. 24 at 4.)  While Plaintiff selectively quotes Jaeger's deposition to support this assertion, a full reading of that deposition and the record in its entirety show that Jaeger made an independent evaluation before reaching the decision to suspend and later terminate Plaintiff. Instead of "rubber-stamping" Morrison's charges, Jaeger "decided to discount" two of the allegations of misconduct leveled against Plaintiff after hearing from Plaintiff's

counsel.[9]  See Doc. 14-6 at 2; Llampallas, 163 F.3d at 1249 (noting that any causal

link between the recommender and the adverse employment action is severed if,

instead of rubber-stamping the adverse recommendation, the decision-maker

conducts an independent investigation).  Furthermore, Jaeger testified that in addition

to relying on Morrison's statements she also considered the investigation of another

employee into Plaintiff's conduct, as well as the observations of other staff.  See Doc.

14-4 at 44 ("I mean, I did not make that decision solely on Commander Morrison");

see also Doc. 20-3 at 33-39 (findings of investigation by LCDR Lathem).  Therefore,

Jaeger's independent investigation and decision to suspend and later terminate

Plaintiff cured the taint, if any, of Morrison's discriminatory animus.[10]

Plaintiff also seems to assert that the events detailed in Count IV of her

amended complaint combine, in their totality, to constitute retaliation.  The Supreme

Court recently clarified that an adverse employment action in the retaliation context

is an action that is "materially adverse;" that is, an action that "might have dissuaded

---

[9]  Plaintiff argues that the original inclusion of these allegations in Morrison's recommendation is direct evidence of retaliation because they were based on statements made during the EEO process.  However, Plaintiff must show that Jaeger discriminated and/or retaliated against her through the suspension and termination.  Once Jaeger discounted the improper recommendation of Morrison through her investigation, the excluded claims became irrelevant.

[10]  Even if the Court were to assume arguendo that Plaintiff had established a prima facie case of retaliation, Defendant has advanced legitimate, non-retaliatory reasons for Plaintiff's suspension and termination as discussed in relation to Plaintiff's claim under the Rehabilitation Act.  Supra.

a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. V. White, 126 S. Ct. 2405, 2411 (2006).  Such a standard is necessary to "separate significant from trivial harms" and because "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  Id. at 2415.

In her amended complaint, Plaintiff alleges twenty-one incidents of retaliation and harassment, not including her eventual suspension and termination.  (Doc. 4 ¶ 19.)   These incidents include accusations that Plaintiff "was falsely accused of spreading rumor, gossip, and lies," "was not permitted to communicate with the Commanding Officer (CO)" and "was falsely accused of hitting another employee." (Id.)  However, none of the allegations as set forth by Plaintiff rise to the level of a discrete, materially adverse employment action.[11]  These allegations exemplify the "petty slights" and "minor annoyances" that the Supreme Court excluded while expanding the definition of "adverse employment action."  Burlington N. & Santa Fe Ry. Co., 126 S.Ct. at 2415.  The Court finds that these allegations, even in their

---

[11]   Undoubtedly there are some circumstances where a letter of reprimand, included in this list at subparagraph f of Count IV of Plaintiff's amended complaint, could be considered an adverse employment action.  See e.g.  Walker v. Johnson, 501 F.Supp 2d 156, 173 (D. D.C. 2007).  This does not seem to be the case here.  Plaintiff has not even provided the letter to the Court and has not relied on the letter, standing alone, to establish a prima facie case of retaliation.

totality, are not actionable claims of retaliation because a reasonable person in Plaintiff's situation would not have considered them "materially adverse."  See Byrd v. Auburn U. at Montgomery, 2007 WL 1140424, *14 (M.D. Ala. 2007) (employee's complaints of being "treated with hostility and criticized," receiving "offensive emails and directives," and a change in employment classification were not materially adverse under the Burlington Northern standard).  Accordingly, summary judgment on Plaintiff's Count III and IV claims of retaliation will be granted.

### D.  Hostile Work Environment Claim

Count IV of Plaintiff's amended complaint seems to be a grouping together of all her negative experiences in the Manpower Department of the Naval Hospital in Jacksonville.  Defendant has construed this claim as one alleging hostile work environment discrimination based on age, disability and retaliation, and the Court will do the same.

To establish a prima facie case of hostile work environment harassment and/or retaliation, Plaintiff must show that:  (1) she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) employer responsibility through direct or vicarious liability. See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

The Court will not analyze all five of these elements, as Plaintiff's failure to show conduct sufficiently severe and pervasive is dispositive of her claim.

Both the Supreme Court and the Eleventh Circuit have repeatedly counseled that the ordinary tensions and personality conflicts experienced in the workplace do not create employer liability under a theory of hostile work environment harassment. See Burlington Northern and Santa Fe Ry. Co., 126 S.Ct. at 2415 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience"); Faragher v. City of Boca Raton, 524 U.S. 775, 789 (1998) (noting that the requirement that conduct be sufficiently extreme filters out "the ordinary tribulations of the workplace"); Gupta, 212 F.3d at 586 (refusing to punish "mere bothersome and uncomfortable conduct" in a sexual harassment case); see also Vore v. Indiana Bell Telephone Co., Inc., 32 F.3d 1161, 1162 (7th Cir. 1994) ("[P]ersonality conflicts between employees are not the business of the federal courts").   In evaluating whether the harassment is severe and pervasive, courts analyze "the frequency of the conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's job performance." Johnson v. Booker T. Washington Broadcasting Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000) (citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1244-45 (11th Cir. 1999)).

The vast majority of the claims submitted by Plaintiff as constituting a hostile work environment are trivial on their face.  A small sample of the approximately 100 instances of harassment documented by Plaintiff in her interrogatory answers prove this to be so:

> On 24 September 2003, LCDR Morrison was condescending and treated Plaintiff with disrespect.
>
> On 15 March 2004, LCDR Morrison returned from maternity leave.  She was rude, short and hostile with Plaintiff.  She told Plaintiff to write down her questions and she would answer them all at one time.  No other staff member was treated similarly.
>
> On 27 April 2004, LCDR Morrison questioned [Plaintiff's] sick leave request stating she needed to ensure Plaintiff was not abusing the sick leave.
>
> On 9 July 2004, LCDR Morrison displayed a complete lack of trust in Plaintiff and openly demonstrated a hostile environment by questioning Plaintiff in front of coworkers regarding her request to review DMHRS.
>
> On 10 September 2004, Plaintiff was ordered to move her files from the office cabinet.  Plaintiff was told Mrs. Bentley needed the space.  Six out of eight drawers remained empty.

(Doc. 14-5 at 12-23.)  These allegations exemplify the typical workplace conflict for which there is no federal remedy.  See e.g. Hanani v. State of N.J. Dept. Of Environmental Protection, 205 Fed. Appx. 71, 79 (3rd Cir. 2006) (holding that an increased workload, a small reduction in a performance rating, conflicting grammatical edits to work product by supervisors and an argument with a coworker did not constitute severe or pervasive conduct).

Admittedly, Plaintiff did allege a few claims that may be more severe and come

22

closer to establishing a hostile work environment.  <u>See</u> Doc. 23-2 at 86 (detailing an incident where LCDR Morrison approached Plaintiff from behind and "assaulted" her by striking her in the back); Doc. 14-5 at 18 ("On 17 June 2004, LCDR Morrison displayed hostility by coming in the office, screaming at Plaintiff, slapping a table with her open hands and then taking a stance as if to flip the table over on Plaintiff").  However, neither of these events, either standing alone or in the context of the approximately 100 other incidents described by Plaintiff, are sufficient proof that the Manpower Department was "permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment."  <u>See</u> <u>Mack v. ST Mobile Aerospace Engineering, Inc.</u>, 195 Fed. Appx. 829, 833 (11th Cir. 2006) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).  The "assault" was a one time occurrence, the severity of which is a disputed matter and the hostility allegedly displayed by Morrison towards Plaintiff on June 17 was not "severe" within the meaning of the law.  Furthermore, Plaintiff has failed to show any causal connection between these instances and her protected status.  While the circumstances of Plaintiff's employment were unfortunate, her allegations are not sufficient to give rise to liability under a theory of hostile work environment based on disability, age or reprisal.  Therefore, the Court will grant Defendant's motion for summary judgment on Count IV.

Accordingly, and with due consideration, it is hereby

**ORDERED:**

1.   Defendant's Motion for Summary Judgment (Doc. 14) is **GRANTED**. Judgment will be entered for Defendant and against Plaintiff.

2.  The Clerk will close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of December, 2007.

TIMOTHY J. CORRIGAN
United States District Judge

jcd.
Copies to:
Counsel of Record